## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES N. WARREN, ROBERT T. WARREN, ABDUL JAVEED and JOAN JAVEED, | § § § § | |
| Plaintiffs, | § § | No. 3:12-cv-03581-M |
| v. | § § | |
| CHESAPEAKE EXPLORATION, LLC and CHESAPEAKE OPERATING, INC., | § § § | |
| Defendants. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the Motion to Dismiss Plaintiff's Complaint, filed by Defendants Chesapeake Exploration, LLC and Chesapeake Operating, Inc. (collectively "Chesapeake") [Docket Entry #13]. This case arises from an Oil, Gas and Mineral Lease[1] (the "Lease Agreement") between the lessors, Plaintiffs Charles N. Warren, Robert T. Warren, Abdul Javeed and Joan Javeed ("Lessors") and the lessee, Chesapeake.

At issue is the interplay between two contractual provisions, one found in the Lease Agreement, and the other found in an Addendum to the Lease Agreement.[2] The Lease Agreement provides that "[a]s royalty, Lessee covenants and agrees . . . to pay Lessor for gas and casinghead gas produced from said land (1) when sold by Lessee, Twenty Two and One-half (22.5%) of the amount realized by Lessee, <u>computed at the mouth of the well</u>." *Pls.' Second Am. Compl.*, Ex. A-1 (emphasis added). The Addendum provides:

---

[1] There are three identically-titled contracts at issue in this case, two executed by the Warren Plaintiffs, and a third executed by the Javeed Plaintiffs. Because the relevant contractual language is functionally equivalent in all three Lease Agreements, the Court will refer to the leases as a single contract.

[2] The addendum to the Javeed Lease Agreement is entitled Exhibit "A" to Oil, Gas and Mineral Lease. *Pls.' Second Am. Compl.*, Ex. B.

4. Notwithstanding anything to the contrary, herein contained, all royalty paid to Lessor shall be free of all costs and expenses related to the exploration, production and marketing of oil and gas production from the lease including, but not limited to, costs of compression, dehydration, treatment and transportation. Lessor will, however, bear a proportionate part of all those expenses imposed upon Lessee by its gas sale contract to the extent incurred subsequent to those that are obligations of Lessee.

. . .

8. It is expressly agreed that the provisions of this Exhibit shall supercede [sic] any portion of the printed form of this Lease which is inconsistent herewith, and all other printed provisions of this Lease, to which this is attached, are in all other things subrogated to the express and implied terms and conditions of this Addendum.

*Id.* The question presented is whether the combination of these provisions authorized Chesapeake to deduct post-production costs from the royalty owed to Lessors. If so, Lessors' breach of contract and accounting claims fail as a matter of law.

This case is controlled by the twin decisions of the Texas Supreme Court in *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118 (Tex. 1996) and *Judice v. Mewbourne Oil Co.*, 939 S.W.2d 133 (Tex. 1996). In *Heritage*, the Texas Supreme Court analyzed the effect of contractual language similar to that at bar. There, the gas leases in question provided, in pertinent part, that each lessor's royalties would constitute a fixed percentage of the "market value at the well" of the gas produced; "provided, however, that there shall be no deductions from the value of the Lessor's royalty by reason of any required processing cost of dehydration, compression, transportation, or other matter to market such gas." *Heritage*, 939 S.W.2d at 120.

The Court determined that the terms "royalty" and "market value at the well" had generally accepted meanings. "[R]oyalty is usually subject to post-production costs. . . ." *Id.* at 122. When a royalty is computed at the mouth of the well, it is determined before any post-production value is added and before any post-production costs are incurred. *Id.* at 122–23. In this context, the Court concluded that a clause prohibiting post-production deductions from the

royalty was surplusage that "merely restat[ed] [the] existing law." *Id.* That existing law prohibited a lessee from making deductions that would reduce the value of the royalty below the fractional value computed *after* making the post-production deductions necessary to determine the value at the mouth of the well. Accordingly, the "no deductions" clause notwithstanding, the contract authorized the lessee to make post-production deductions from the amount realized at the point of sale, to determine the value *at the mouth of the well. Id.* at 123. In *Judice*, decided the same day as *Heritage*, the Court applied the same analysis to gas lease royalties to be calculated by the net proceeds or amount realized, as is the case here. In *Heritage*, the relevant phrase was "market value."

The Lessors' attempts to distinguish *Heritage* and *Judice* are unavailing. First, the Court disagrees that the phrase used in the Lease Agreement—"notwithstanding anything to the contrary"—differs in any material way from the phrase used in *Heritage*—"provided, however." Nor does the Addendum's "supersede" paragraph alter the relationship between the royalty calculation clause and the no deductions clause. But more importantly, *Heritage* instructs that, under Texas law, the royalty calculation and no deductions clauses *do not conflict*. Instead, the no deductions clause is mere surplusage, reiterating what is already conveyed by the royalty clause. Finally, *Heritage* remains controlling precedent, in spite of the opinion dissenting from the denial of rehearing.

Applying *Heritage* and *Judice*, the Court concludes that under Texas law, Chesapeake properly deducted post-production costs when calculating Lessor's at-the-well royalties. Thus, Lessors' claims for breach of contract and accounting are precluded as a matter of law, and are **DISMISSED with prejudice**. Judgment will be entered separately.

**SO ORDERED**.

May 20, 2013.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**